FILED 28 JUN '18 15:34 USDC-ORP

**UNDER SEAL**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:18-CR- 00319-JO |
| v. | INDICTMENT |
| MARK LEROY DENCKLAU,<br>EARL DEVERLE FISHER, and<br>TILER EVAN PRIBBERNOW, | 18 U.S.C. §§ 1959(a)(1) and 2<br>18 U.S.C. §§ 1201(a)(1), (c) and 2<br>18 U.S.C. §§ 3591 and 3592 |
| Defendants. | UNDER SEAL |

THE GRAND JURY CHARGES:

### The Enterprise

1. At all times relevant to this Indictment, **MARK LEROY DENCKLAU, EARL DEVERLE FISHER,** and **TILER EVAN PRIBBERNOW,** the defendants, and others known and unknown, were members and associates of the Gypsy Joker Outlaw Motorcycle Club [hereinafter "GJOMC"], a criminal organization whose members and associates engaged in offenses involving narcotics trafficking and acts of violence including acts involving murder, robbery, extortion, firearms offenses, and obstruction of justice, and which operated in Oregon, Washington and elsewhere.

2. Within the United States, the GJOMC is composed of individual chapters located in cities throughout Oregon and Washington, including Klamath Falls, Salem, Portland, Seattle, Spokane and the Tri-Cities (Kennewick). Each chapter has officers, to include a president, vice-president, treasurer, sergeant at arms, and other general members. The chapters ultimately fall under the authority of the national president, also known as "the Wiz." Criminal activities of the GJOMC are often committed under the direction of the national and chapter officers. Associates and members follow a written code of conduct. Violations of the code may result in fines, probation, expulsion, a new prospecting period, or acts of violence against the violator.

3. Membership in the GJOMC is available only to men over the age of 21. The GJOMC excludes African Americans, law enforcement officers, homosexuals, and intravenous drug users from membership. Members must own an American made motorcycle.

4. Membership in the GJOMC involves a specific process. It starts with participation in the GJOMC as an associate, and is followed by a prospecting period before full membership is granted. Full membership is also known as "patched" status. Members of the GJOMC are "patched" as a formal method of identifying themselves and their level of participation in the GJOMC.

5. The vestments denoting membership in the GJOMC, referred to as "cuts" or "colors," include a leather vest with a patch depicting the club emblem, a court jester known as "Simon." The "Simon" emblem is surrounded by a top "rocker" bearing the words GYPSY JOKER and a bottom rocker identifying the nationality of the member (U.S.A., Germany, or Australia). The vests also display other symbols including a "1%er" in a diamond, a 5-year member patch, and "In Memory" patches to recognize deceased members. The "1%"

designation is in response to a proclamation issued in the 1940s by the American Motorcycle Association that ninety-nine percent of persons in motorcycle clubs were law-abiding citizens. The "1%er" patch signifies that the GJOMC members are in the other 1%; that is, they are not law-abiding citizens.

6. GJOMC prospects wear vests displaying patches denoting prospect status. In order for a prospect to become a member, he must prospect for a minimum of six months before the vote; he must attend a meeting in each chapter with his sponsor; and he must have 100% support from his chapter membership.

7. GJOMC members pay dues to their local chapter, a percentage of which goes to the national organization. Members who earn money from criminal activity are expected to contribute some of those earnings to the GJOMC.

8. GJOMC oversees several "support clubs" in Oregon and Washington, including the Road Brothers Northwest Motorcycle Club, Solutions Motorcycle Club, Northwest Veterans Motorcycle Club, High-Side Riders, and the Freedom Fellowship Motorcycle Club. Support club members all pay monetary dues to their own clubs, a percentage of which goes to the GJOMC. Support club members conduct criminal activities in support of the GJOMC and serve as a source for new membership. Support club members may wear a patch on their vests to advertise their allegiance to the GJOMC, including patches that read "Simon Sez."

9. The GJOMC own real and personal property, and conduct regular meetings of its officers and general members. The GJOMC often decide various issues by voting. Members attend weekly meetings called "church" at their chapter clubhouse. Members also participate in several "required" motorcycle runs every year, including New Years, Simon's Birthday (April

1), Memorial Day, July 4 Summer Run, and Labor Day. These runs often start in one state and end in another. Activities of the GJOMC frequently require interstate travel.

10. This GJOMC criminal organization, including its leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

### Purposes of the Enterprise

11. The purposes of the enterprise included the following:

   a. Enriching the members and associates of the enterprise through, among other things, murder, extortion, robbery, and distribution of narcotics;

   b. Preserving and protecting the power, territory, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder;

   c. Promoting and enhancing the enterprise and its members' and associates' activities;

   d. Keeping victims in fear of the enterprise and in fear of its members and associates through threats of violence and violence; and

   e. Providing assistance to other members and associates who committed crimes for and on behalf of the enterprise; and providing assistance to other enterprise members and associates, in order to hinder, obstruct, and prevent law enforcement officers from identifying the offender, apprehending the offender, and trying to punish the offender.

## Means and Methods of the Enterprise

12. The means and methods by which the defendants and other members and associates of GJOMC conduct and participate in the conduct of the affairs of GJOMC include, but are not limited to:

   a. Members of the enterprise and their associates used, attempted to use, and conspired to use extortion, which affected interstate commerce;

   b. Members of the enterprise and their associates committed, attempted, conspired and threatened to commit acts of violence, including murder, assaults, robbery and extortion, to protect and expand the enterprise's criminal operations;

   c. Members of the enterprise and their associates promoted a climate of fear through violence and threats of violence; and

   d. Members of the enterprise and their associates trafficked in methamphetamine and marijuana.

13. The above-described enterprise, through its members and associates, engaged in "racketeering activity" as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder in violation of Washington state law, acts involving extortion in violation of Oregon and Washington state law, and offenses involving narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846.

//

//

//

//

**Violent Crimes in Aid of Racketeering**

**COUNT 1**
**(Murder in Aid of Racketeering)**
**(18 U.S.C. § 1959(a)(1))**

14. Paragraphs One through Thirteen of this indictment are re-alleged and incorporated by reference as though fully set forth herein.

15. On or between June 30 and July 1, 2015, in the District of Oregon, and Western District of Washington, for the purpose of maintaining and increasing position in the GJOMC, an enterprise engaged in racketeering activity, the defendants, **MARK LEROY DENCKLAU**, **EARL DEVERLE FISHER**, and **TILER EVAN PRIBBERNOW**, and others known and unknown to the grand jury, aiding and abetting each other, unlawfully and knowingly committed, and aided and abetted the commission of, the murder of Robert Huggins, in violation of Oregon Revised Statutes 161.155, 163.115(1)(a) and 163.115(1)(b); and Washington Revised Statutes 9A.08.020, and 9A.32.030.

All in violation of Title 18, United States Code, Section 1959(a)(1).

**COUNT 2**
**(Kidnapping in Aid of Racketeering, Resulting in Death)**
**(18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2)**

16. Paragraphs One through Thirteen of this indictment are re-alleged and incorporated by reference as though fully set forth herein.

17. On or between June 30 and July 1, 2015, in the District of Oregon, and Western District of Washington, for the purpose of maintaining and increasing position in the GJOMC, an enterprise engaged in racketeering activity, the defendants, **MARK LEROY DENCKLAU**, **EARL DEVERLE FISHER**, and **TILER EVAN PRIBBERNOW**, and others known and

unknown to the grand jury, aiding and abetting each other, unlawfully and knowingly kidnapped Robert Huggins, in violation of United States Code Sections 1201(a)(1); and the grand jury further alleges that this kidnapping resulted in the death of Robert Huggins;

All in violation of 18 U.S.C. Section 1959 (a)(1) and 2.

## COUNT 3
### (Kidnapping Resulting in Death)
### (18 U.S.C. §§ 1201(a)(1) and 2)

On or between June 30 and July 1, 2015, in the District of Oregon, and Western District of Washington, the defendants, **MARK LEROY DENCKLAU**, **EARL DEVERLE FISHER**, and **TILER EVAN PRIBBERNOW**, did unlawfully seize, confine, kidnap, abduct and carry away, and, in committing or in furtherance of the commission of the offense, did willfully transport Robert Huggins in interstate commerce from Portland, Oregon to Woodland, Washington and traveled in interstate commerce from Portland, Oregon to Woodland, Washington, and used a telephone, a means, facility, and instrumentality of interstate or foreign commerce; the grand jury further alleges that this kidnapping resulted in the death of Robert Huggins;

In violation of Title 18, United States Code, Sections 1201(a)(1) and 2.

## COUNT 4
### (Conspiracy to Commit Kidnapping, Resulting in Death)
### (18 U.S.C. §§ 1201(a)(1) and 1201(c))

On or between June 5 and July 1, 2015, in the District of Oregon, and Western District of Washington, defendants **MARK LEROY DENCKLAU**, **EARL DEVERLE FISHER**, and **TILER EVAN PRIBBERNOW**, and others known and unknown to the grand jury, did knowingly combine, conspire, confederate, and agree to seize, confine, kidnap, abduct and carry away Robert Huggins, and used a telephone, a means, facility, and instrumentality of interstate or

foreign commerce in furtherance of this offense; the grand jury further alleges that this conspiracy to kidnap resulted in the death of Robert Huggins;

In violation of Title 18, United States Code, Sections 1201(a)(1) and 1201(c).

## NOTICE OF SPECIAL FINDINGS
### (18 U.S.C. §§ 3591 and 3592)

The Grand Jury incorporates by reference and re-alleges the allegations contained in Counts One and Three of this Indictment and makes the following special findings as to Count One and Three, the defendants:

**MARK LEROY DENCKLAU,**
**EARL DEVERLE FISHER,**

and

**TILER EVAN PRIBBERNOW**

    a.    Were 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)];

    b.    Intentionally killed the victim, Robert Huggins. [Title 18, United States Code, Section 3591(a)(2)(A)];

    c.    Intentionally inflicted serious bodily injury that resulted in the death of the victim, Robert Huggins. [Title 18, United States Code, Section 3591(a)(2)(B)];

    d.    Intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Robert Huggins, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)]; and

    e.    Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such

that participation in the act constituted a reckless disregard for human life and the victim, Robert Huggins, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

Dated: June 28th, 2018

A TRUE BILL.



OFFICIATING FOREPERSON

Presented by:

BILLY J. WILLIAMS
United States Attorney

_____
LEAH K. BOLSTAD, OSB #052039
Assistant United States Attorney

DAVID JAFFE
Acting Chief
Organized Crime and Gang Section

_____
REBECCA A. STATON, INB #22861-49
Trial Attorney