BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**LEAH K. BOLSTAD, OSB #052039**
Assistant United States Attorney
Leah.Bolstad@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
Telephone: (503) 727-1000
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:18-cr-00319-01-JO |
| v. | GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION |
| MARK LEROY DENCKLAU, | |
| Defendant. | |

The United States of America, by and through Billy J. Williams, United States Attorney for the District of Oregon, and Leah K. Bolstad, Assistant United States Attorney, hereby requests an order to detain defendant pre-trial as he presents a danger to the community and a risk of flight or non-appearance.

**I.      PROCEDURAL BACKGROUND**

On June 28, 2018, a federal grand jury returned an indictment charging defendant and two co-defendants with Murder in Aid of Racketeering (Count 1, 18 U.S.C. § 1959(a)(1)); Kidnapping in Aid of Racketeering, Resulting in Death (Count 2, 18 U.S.C. § 1959(a)(1)); Kidnapping, Resulting in Death (Count 3, 18 U.S.C. § 1201(a)(1)); and Conspiracy to Commit

Kidnapping, Resulting in Death (Count 4, 18 U.S.C. § 1201(c)).  In this racketeering enterprise, lead defendant Mark Dencklau holds a leadership role as the President of the Portland Chapter of the Gypsy Joker Outlaw Motorcycle Club.  The indictment includes notice of special findings as to Counts 1 and 3, including that defendant Dencklau intentionally killed the victim and intentionally inflicted serious bodily injury that resulted in the death of the victim.  (ECF No. 1, page 8).  These allegations trigger the highest federal penalties possible: sentences of either life or death.  *See* 18 U.S.C. §§ 1959(a)(1), 1201(a).

On July 9, 2018, lead defendant Dencklau made his initial appearance in this federal case. He appeared by writ from Multnomah County, where he has been in custody since April 2016 pending murder charges stemming from the same incident that gives rise to this federal indictment.  The United States Pretrial Office reviewed defendant's history, the nature of the offense, defendant's prior performance on supervised release, his warrant status in a separate case from Utah, and based on all the relevant factors, pretrial recommended detention.  The government joined Pretrial's recommendation for detention.

The Honorable Judge Acosta ordered defendant detained based on risk of danger to the community and risk of flight. (ECF No. 17).

## II.     ANALYSIS

Defendant filed a motion for release with a proposal to reside with another long-time member of the Gypsy Joker Outlaw Motorcycle Club.  Defendant's motion asks the Court to put aside the fact that he committed the instant June 2015 murder offense while in warrant status in a 2014 criminal case in Utah.  The documents defendant submitted from his Utah case show that this defendant ignores judicially imposed release conditions, and he fails show up to required court appearances.  Given that he now faces extremely high sentencing exposure of Life or

Death if convicted, he has a much greater incentive than ever before to flee the jurisdiction and/or the United States. Additionally, there is nothing in defendant's proposed release plan to mitigate the risk of danger to the community, especially the witnesses in this case.

In its detention order (ECF No. 17), the Court checked the below-listed boxes as reasons why <u>there are no conditions</u> or combination of conditions that can ensure the safety of the community nor assure defendant's appearance in court:

- ✓ Nature of offense
- ✓ Prior criminal history, drug offenses & alcohol related
- ✓ Prior failures to appear
- ✓ Outstanding Warrant

Additional factors are also relevant and support a detention order. First, defendant is a leader in the Gypsy Joker racketeering enterprise described in the pending indictment. Second, since his pretrial detention began in April 2016, defendant has attempted to engage in obstructive activities and witness tampering, as described below. Third, defendant has cash resources at his disposal that would enable him to flee the jurisdiction if released.

These factors, together with the risk factors cited by Judge Acosta, remain at issue, and defendant's proposed release plan does very little to address these concerns. In this case, the evidence shows that defendant presents both a flight risk and a danger to the community. Moreover, any combination of pretrial conditions, regardless of how strictly worded, will "contain one critical flaw. In order to be effective, they depend on [defendant's] good faith compliance." *Hir*, 517 F.3d at 1092. Here, defendant's history and characteristics cast serious doubt on whether he is worthy of the Court's trust, and whether he is capable of good faith compliance.

//

//

1.  **Nature and Circumstances of the Offense**

The nature and circumstances of this offense weigh heavily in favor of detention. The indictment in this case alleges defendant kidnapped and murdered a victim in late June 2015. Notably, the charged offenses allege defendant committed these crimes *in aid of racketeering*, and specifically for the Gypsy Joker Outlaw Motorcycle Club (the enterprise).

2.  **Weight of the Evidence**

The weight of the evidence is strong and supports detention here. This indictment arises from a long-term federal investigation that includes numerous witness statements, surveillance video, eyewitness testimony, phone toll records, cell tower location records (obtained with search warrants), and post-arrest admissions by defendant. Specifically, defendant made damning admissions to his then girlfriend N.S., regarding his role in putting a "hit" out on victim and ex-Gypsy Joker member Robert Huggins. Defendant told his girlfriend that he had offered a reward for help in finding Huggins, and that Huggins was to be captured, not hurt, so that Gypsy Joker members could "deal with him."

Later, after law enforcement officers found Huggins' tortured dead body dumped in a field, defendant revealed he was very worried that police would find out the Gypsy Joker was responsible for Huggins' death precisely because defendant had put out a reward for Huggins' capture. Indeed, defendant was worried that he could be charged with "conspiracy" because of the reward he offered. Because of his fear of being caught, after Huggins' murder, defendant started getting items out of the house, including firearms, in anticipation of his own arrest.

After his arrest, defendant reached out to associates for assistance in hiding evidence from investigators. For example, he made a recorded call to his employer asking for assistance in finding and hiding written documents (the Club bylaws). He asked this same employer to

retrieve and secure defendant's cash, believed to be roughly $60,000, and hold onto it for defendant pending his release.

Additionally, the Gypsy Joker Outlaw Motorcycle Club (GJOMC) has already attempted to find a key witness in this investigation, prompting law enforcement to relocate the witness out-of-state.  Prior to the state indictment, defendant sent two Gypsy Joker members to find his ex-girlfriend who had moved to a hotel in Salem.  When approached, she called the police in a frenzy to ask for help and protection from these violent individuals.  In the recorded call, she said she feared retaliation because she knew too much about a murder directed by her ex-boyfriend, the defendant.  During the initial arrests related to the state homicide case, Portland Police Bureau (PPB) observed members of the GJOMC go to the witness's house to look for the witness, while the witness was in PPB protection.

### 3. History and Characteristics of the Defendant/Release Status

This factor also weighs against defendant.   Although he does not have a lengthy record of convictions, defendant failed to appear in the fall of 2014, his most recent criminal prosecution from out-of-state (Utah).   While in warrant status, defendant committed the instant murder offense in June 2015.

### 4. Nature and Seriousness of the Danger if Released

The indictment alleges that this racketeering enterprise is a criminal organization whose members engage in offenses involving narcotics trafficking and acts of violence involving murder, robbery, extortion, firearms offenses and obstruction of justice.   (ECF No. 1, ¶ 1). Members of the enterprise share a common purpose to preserve and protect their territory through the use of intimidation, violence, and threats of violence.  (ECF No. 1, ¶ 11b).   Thus, the government is concerned that if released, this defendant will engage in conduct the Bail

Reform Act cites as problematic: the obstruction or attempted obstruction of justice through acts of violence or intimidation towards prospective witnesses. 18 U.S.C. § 3142(f)(2)(B).

Defendant is a self-proclaimed member of the Gypsy Joker Outlaw Motorcycle Club, he held the rank of President of the Portland Chapter, and as such, he has the ability and resources to direct others to engage in obstructive activity. Keeping him in custody pending trial will restrict his access to these resources and ensures that whatever plans he may have to obstruct justice can be monitored by investigators and jailors.

### III.  CONCLUSION

In summary, the relevant inquiry for the court is whether there are conditions that can be placed upon defendant that will reasonably assure the safety of the community and defendant's appearance in court. Here, there are none. If released "on conditions," defendant's history, characteristics, and the nature of the instant offense demonstrate that he is a danger to the community. He faces extreme sentencing exposure, so he has a huge incentive to flee. Defendant's leadership role in a violent enterprise also increases the risk that he will continue to engage in witness tampering, obstruction, and possible violence towards witnesses and co-conspirators in this case. Accordingly, the government respectfully requests that the Court detain defendant pending trial.

Dated:  August 31, 2018

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*/s/ Leah K. Bolstad*
LEAH K. BOLSTAD, OSB #052039
Assistant United States Attorney