```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF OREGON

 3   UNITED STATES OF AMERICA,      )
                                    )
 4            Plaintiff,            )  Case No. 3:18-cr-00319-JO
                                    )
 5       v.                         )
                                    )
 6   MARK LEROY DENCKLAU (1),       )  March 5, 2019
     EARL DEVERLE FISHER (2),       )
 7   KENNETH EARL HAUSE (4),        )
     RYAN ANTHONY NEGRINELLI (5),   )
 8   CHAD LEROY ERICKSON (6), and   )
     JOSEPH DUANE FOLKERTS (7),     )
 9                                  )
              Defendants.           )  Portland, Oregon
10   _____)
```

### Status Conference

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE ROBERT E. JONES

UNITED STATES DISTRICT COURT SENIOR JUDGE

|   |   |   |
|---|---|---|
| 1 |   |   |
| 2 |   | APPEARANCES |
| 3 |   |   |
| 4 | FOR THE PLAINTIFF: | Ms. Leah K. Bolstad |
|   |   | United States Attorney's Office |
| 5 |   | 1000 S.W. Third Avenue, Suite 600 |
|   |   | Portland, OR 97204 |
| 6 |   |   |
| 7 |   |   |
| 8 | FOR DEFENDANT MARK |   |
|   | LEROY DENCKLAU: | Mr. Erik E. Eklund |
| 9 |   | Law Office of Erik E. Eklund |
|   |   | 333 S.W. Taylor Street, Suite 300 |
| 10 |   | Portland, OR 97204 |
| 11 |   | Ms. Lisa J. Ludwig |
|   |   | Ludwig Runstein LLC |
| 12 |   | 333 S.W. Taylor Street, Suite 300 |
|   |   | Portland, OR 97204 |
| 13 |   |   |
| 14 | FOR DEFENDANT EARL |   |
|   | DEVERLE FISHER: | Ms. Deborah S. Burdzik |
| 15 |   | Attorney at Law |
|   |   | 1906 S.W. Madison Street, Suite 101 |
| 16 |   | Portland, OR 97205 |
| 17 |   | Mr. Ernest Warren, Jr. |
|   |   | Ms. Alicia Hercher |
| 18 |   | Warren & Sugarman |
|   |   | 838 S.W. First Avenue, Suite 500 |
| 19 |   | Portland, OR 97204 |
| 20 |   |   |
| 21 | FOR DEFENDANT KENNETH |   |
|   | EARL HAUSE: | Mr. Todd E. Bofferding |
| 22 |   | Attorney at Law |
|   |   | P.O. Box 539 |
| 23 |   | Hood River, OR 97031 |
| 24 |   |   |
| 25 |   |   |

```
 1

 2   FOR DEFENDANT RYAN
     ANTHONY NEGRINELLI:     Ms. Dianna J. Gentry
 3                           Dianna J. Gentry, P.C.
                             6500 S.W. Macadam Avenue, Suite 300
 4                           Portland, OR 97239

 5                           Mr. Matthew A. Schindler
                             Attorney at Law
 6                           501 4th Street, Suite 324
                             Lake Oswego, OR 97034
 7

 8   FOR DEFENDANT CHAD
     LEROY ERICKSON:         Mr. Richard L. Wolf
 9                           Richard L. Wolf, P.C.
                             12940 N.W. Marina Way, Slip A
10                           Portland, OR 97231

11

12   FOR DEFENDANT JOSEPH
     DUANE FOLKERTS:         Mr. Andrew M. Kohlmetz
13                           Law Offices of Andrew M. Kohlmetz, LLC
                             741 S.W. Lincoln Street
14                           Portland, OR 97201

15                           Ms. Laurie Bender
                             Laurie Bender, P.C.
16                           735 S.W. First Avenue, 2nd Floor
                             Portland, OR 97204
17

18

19   COURT REPORTER:         Bonita J. Shumway, CSR, RMR, CRR
                             United States District Courthouse
20                           1000 S.W. Third Ave., Room 301
                             Portland, OR  97204
21                           (503) 326-8188

22

23

24

25
```

```
1                    (P R O C E E D I N G S)
2                  (March 5, 2019; 11:03 a.m.)
3           THE COURT:  Good morning, everybody.  Please have a
4    seat.  We have -- Do you want to announce the case?
5           MS. BOLSTAD:  Yes, Your Honor.  Leah Bolstad for the
6    United States.  We're here in the matter of the United States
7    v. Mark Leroy Dencklau, et al.  It's Case No. 18-cr-319.
8           I can introduce the defense counsel or we could just
9    go individually if you'd like.
10          THE COURT:  Well, I have the names here, and I'll
11   hand that -- Becky, you want to hand the list of who is who?
12   That's -- the prosecution just gets one.
13          Now, in respect to this matter, I don't know if
14   counsel has had the opportunity to obtain this.  Judge David
15   Carter on Thursday wrote an opinion and disposition.
16          Do you have that?
17          MS. BOLSTAD:  No, Your Honor.
18          THE COURT:  Do you have that?  Well, it would be very
19   helpful.  I made copies for you.  It's 51 pages long.  It
20   covers a lot of territory.  Essentially, the history of the
21   Mongols Nation involves a lot of issues that we'll be
22   confronting in this litigation.
23          That big first position that he took was that the
24   RICO situation -- corporate liability for individual acts of
25   members -- was improper, and then that was reversed by the
```

1  Ninth Circuit. Judge Graber, I think, wrote the opinion. It's
2  an unpublished opinion, and it will be -- it has since been --
3  Carter has since followed the Ninth Circuit and said that there
4  is liability under RICO.
5       So that's about where we are. It's obviously current
6  stuff I hope you'll find helpful.
7       The issue today is to determine where we are going.
8  And so I'll ask the government to please state where you think
9  we are and what we need to do today.
10      MS. BOLSTAD: Thank you, Your Honor.
11      There's a few topics I think we should cover today.
12 Starting with where we are, this Court has already ordered that
13 this case is a complex case. However, that order happened when
14 there was only pending defendants Mr. Dencklau and Mr. Fisher.
15 Now we have new defendants, and the order of complex case does
16 not necessarily apply to those new defendants.
17      I've asked defense counsel if they have any objection
18 for the new defendants to the complex case designation. I do
19 not believe there is any defense objection to that order
20 extending to their clients, but I'll let them speak for that.
21      THE COURT: Is there any objection to designating the
22 remaining defendants as -- additional defendants as complex?
23      MR. SCHINDLER: Good morning, Your Honor. Matthew
24 Schindler here on behalf of Ryan Negrinelli.
25      I do have an objection. I don't know that the case

1  is complex. So I've been appointed. I have a small production
2  of discovery. The sum total of the discovery that I've been
3  provided is one document with my client's name on it. So I've
4  gotten some informal discovery that gives me some sense that
5  these are incidents that took place over about four or five
6  hours, maybe six hours, over the course of one night. Complex
7  cases, from my experience in federal court, are ones involving
8  millions of documents, maybe dozens and dozens of witnesses, 25
9  defendants sitting in the room, tens of thousands of pages of
10 discovery.
11         If that's where we get to, then that's a complex
12 case, but I can't say that right now, and I think I'm being
13 asked to waive my client's speedy trial rights effectively
14 without any real knowledge of what the scope of the case is.
15 And, respectfully, the death penalty counsel are here to say
16 that these things take a certain amount of time. And, I mean,
17 I guess I understand that to some extent, but it seems to me
18 that process is being driven by the government. And so
19 ultimately they're responsible for making a decision about how
20 the case proceeds, but to expect me then to stand up at first
21 appearance and say, "I waive my client's speedy trial rights,"
22 I'm not prepared to do that, Your Honor. So I object.
23         THE COURT: Thank you.
24         Any objection from the other -- Please identify
25 yourself and who you represent.

1     MR. WOLF: Good morning, Your Honor. Richard Wolf.
2  I'm learned counsel for Chad Leroy Erickson.
3     And we do not object to this being designated a
4  complex case. I was learned counsel in the prior capital case
5  that was in this district, *USA v. David Joseph Pedersen*.
6  Ms. Bender was counsel for the co-defendant, Ms. Grigsby. I'm
7  unaware of any potential capital cases that have not been
8  designated complex. There may be some, but I'm unaware of any.
9     THE COURT: Have we determined whether this is
10 designated a capital case?
11    MS. BOLSTAD: It's like Mr. Wolf said, it's a
12 potential capital case. The charges here trigger a death
13 penalty analysis, and the decision is made back east, in
14 Washington, D.C. The decision is not yet made.
15    THE COURT: That was my question.
16    MS. BOLSTAD: Yes.
17    THE COURT: What do we do with this? A potential
18 issue is whether it's been officially designated. Have they
19 given you any indication when they might make that decision?
20    MS. BOLSTAD: Your Honor, unfortunately, they do not
21 respond with specific timelines. It is very unique to each
22 defendant in the case. The four new defendants are newly
23 submitted for that process. The two defendants, Mr. Fisher and
24 Mr. Dencklau, have been in the process for a while now and
25 we're awaiting word. I expect word as to those two defendants

1  within the next month or two.
2          THE COURT: Thank you.
3          MR. WOLF: Your Honor, to continue the -- as
4  Ms. Bolstad said, the process is that the defendants that are
5  facing potential capital charges get to make a presentation to
6  the local U.S. Attorney's Office, then they travel back to Main
7  Justice in D.C. and present to the capital case review
8  committee, which then makes its recommendation to the attorney
9  general, who has the ultimate decision about whether it is
10 going to proceed as a capital case or noncapital case.
11         I can tell you that from the Capital Resource --
12 Federal Capital Resource Counsel, the average time nationally
13 for that decision to be made has been 12.5 months from the time
14 of indictment to the time that defendants make their
15 presentation in D.C.
16         THE COURT: What's the time for the indictment as to
17 your client?
18         MR. WOLF: The indictment was returned in November of
19 2018, and he was just arrested on it one month ago.
20         THE COURT: Thank you.
21         MR. WOLF: And so normally we don't know the nature
22 of whether it's going to be a capital or noncapital case for
23 roughly a year after the indictment.  In the Pedersen-Grigsby
24 case, it was longer than that.  It was nearly 18 months because
25 of complications that arose with discovery in that case.

1    So I hear Mr. Schindler's concerns, but Ms. Bolstad
2  has indicated to us there's already 13,000 pages of discovery.
3  I haven't seen any of it yet. I haven't had an opportunity.
4  But I suspect that it is likely to be complex and continue to
5  be a complex case if it's authorized as a capital case. So we
6  don't object to that designation.
7        THE COURT:  Thank you.
8        Counsel?
9        MR. KOHLMETZ:  No objection for Mr. Folkerts, Your
10  Honor, on the same points that Mr. Wolf raised.
11        THE COURT:  Anybody else?
12        MR. SCHINDLER:  If I might, Your Honor.
13        THE COURT:  Wait until I get back to you.
14        MR. SCHINDLER:  Thank you, Judge.
15        THE COURT:  Anybody else?
16        MS. BOLSTAD:  Mr. Bofferding.
17        MR. BOFFERDING:  Your Honor, I represent Mr. Hause.
18  He does not object to a complex case designation.
19        MR. WARREN:  Your Honor, I represent Mr. Fisher.
20  He's already consented to a complex case designation.
21        THE COURT:  Thank you.
22        Is that it?
23        MR. EKLUND:  Your Honor, Erik Eklund for
24  Mr. Dencklau.  We're in the same posture as Mr. Fisher is, as
25  Mr. Warren indicated.

1  I would like to say in response to some of Mr. Wolf's
2  comments that some of our clients are in different postures
3  than some of the others. My client has been continually
4  incarcerated --
5          THE COURT: Excuse me. I cannot hear you without a
6  mic.
7          MR. EKLUND: I just want to put on the record, Your
8  Honor, Mr. Dencklau has been continually incarcerated on
9  essentially the same charges since April of 2016. The
10 discovery, the 13,000 pages that was provided to us is
11 essentially the same discovery that we had in the state case.
12 So we have conceded the complex case designation, but I do have
13 speedy trial concerns also. That's all.
14         THE COURT: Thank you.
15         Anything further?
16         Thank you.
17         Did you want to say something?
18         MR. SCHINDLER: Yes, please, Your Honor. Matt
19 Schindler again for Mr. Negrinelli.
20         The government has told us that the local prosecutors
21 don't want to execute Mr. Negrinelli. They don't want to do
22 it. So he has to sit for a year in jail while a bureaucrat in
23 D.C. decides whether or not that's appropriate? I just think
24 that's outrageous. I mean, really.
25         This prosecutor right here is prosecuting dozens and

1  dozens and dozens of violent crimes.  If she says these guys
2  don't merit execution, the idea that somebody from Washington,
3  D.C. is just going to show up and go, "I'm sorry, that's not
4  right," seems outrageous to me.  And then we should just sit
5  while our client sits in jail, his 14-year-old daughter, a guy
6  who has worked, with no criminal history, and because these
7  bureaucrats can't make a decision?  That's not fair, Judge, and
8  I think that the pressure should be on them to get rid of this
9  death penalty now.  Get rid of it.  They don't want it.  Why
10 are we doing it?
11          THE COURT:  Thank you.
12          MS. BOLSTAD:  Your Honor, if I may.  It sounds like,
13 to summarize, the only objection to a complex case designation
14 is by Mr. Schindler on behalf of Mr. Negrinelli.  I would
15 suggest that in order to make a decision on his objection --
16 you have the government's motion.  We filed a written motion
17 for a complex case.  Perhaps the defense for Mr. Negrinelli
18 could respond in writing with law and analysis of why this
19 should not be a complex case, and then Your Honor could make a
20 decision as to his client.
21          As to everyone else, I would ask for the Court to
22 order complex case.
23          THE COURT:  I'm going to order a complex case as to
24 all defendants.
25          The next issue:  If we are dealing with the direct

```
 1   murder charges and then we have the separate issue of the RICO
 2   issue, the -- is there anticipation that they will be
 3   segregated?
 4              MS. BOLSTAD:  No, Your Honor, and precisely because
 5   the murder case, the kidnap and murder form predicate offenses
 6   that form the basis of the RICO as to multiple defendants in
 7   this case.  So they're very much intertwined.
 8              THE COURT:  But won't the issues involving the RICO
 9   matter bring out collateral issues that would be inappropriate
10   for the murder?
11              MS. BOLSTAD:  No, Your Honor.  I can see why you
12   would ask that, but in order to prove a violent crime in aid of
13   racketeering -- and that's what is charged, the murder is a
14   violent crime in aid of racketeering -- the government is
15   required to prove as elements of that murder that it was in
16   furtherance of a racketeering enterprise.  So it's very much
17   interrelated.
18              THE COURT:  Thank you.
19              The next question is, having had the designation of
20   being complex, what is your projection on timing?
21              MS. BOLSTAD:  On timing, Your Honor, we've had
22   multiple conferences.  I've met in January with some of the
23   prior defense attorneys who have been in this case for a while.
24   And just this morning I had the pleasure of meeting with the
25   attorneys on the new defendants.
```

1      Given what Mr. Wolf stated -- which I am in full
2 agreement with -- this is going to be a process that takes
3 time.  I am open to ideas about setting trial dates.  I'm also
4 open to the idea of simply setting out a future status
5 conference, perhaps a conference in a few months, after we
6 might have more clarity on the decision from Washington, D.C.
7      At that point, when we know it's an up or down on the
8 death penalty, I think at that point it makes it much easier to
9 set a realistic trial date.
10     MR. WOLF:  I would concur with that, Your Honor.
11 Richard Wolf again for Mr. Erickson.  Until we know whether
12 this is going to be a capital case or not, we don't even know
13 how many counsel are going to be involved.  There is
14 certainly -- has been precedent for when a case has not been
15 authorized as a capital case for learned counsel to be removed
16 from the case, and so if that were to happen in these combined
17 cases, that's half the lawyers' schedules that you would need
18 to be concerned about.
19     And I can tell the Court, in our conference this
20 morning with Ms. Bolstad, myself, I have a -- we were proposing
21 a date for -- if it were a noncapital case, of March of 2020,
22 and if I were to be involved, I have a capital case starting in
23 Washington County in mid January.  I know that Ms. Burdzik has
24 a capital case beginning in --
25     MS. BURDZIK:  May of 2020.  Deborah Burdzik on behalf

1  of Mr. Fisher.
2          MR. WOLF: -- May, and then Ms. Gentry has a capital
3  case.
4          MS. GENTRY: In June of 2020, for three months.
5          MR. WOLF: To the government and to many of us, it
6  seems to make sense to set a status conference for the summer,
7  figure out is this proceeding as a capital or noncapital case,
8  because if it's noncapital, I think it could be set sooner than
9  if it were to proceed as a capital case.
10         THE COURT: Thank you.
11         As far as the issue of having everybody almost
12 brought to a standstill, waiting until the government decides,
13 the Department of Justice decides whether it's a capital case
14 or not, I'm going to set a limit for them of 60 days, and they
15 will be requested by this Court to make that decision.
16         If they want to be heard on that, I would welcome any
17 response. You'll communicate that to them?
18         MS. BOLSTAD: Yes, Your Honor.
19         THE COURT: Then I'll set a status report -- excuse
20 me, a status hearing. What date do you suggest?
21         By the way, Judge David Carter happens to have Oregon
22 roots. I talked to him yesterday. He said that he had been in
23 trial on the RICO issue for weeks and weeks and weeks. Its
24 complexity was enormous. So we aren't talking about something
25 that can be done in a short order. We're looking at a

1  prolonged trial.
2              Yes, ma'am?  You're going to suggest a date for the
3  next status conference?
4              MS. BOLSTAD:  Your Honor, I would suggest a date in
5  mid May, perhaps the 16th of May.  That will be just after the
6  60 days that you've listed.
7              THE COURT:  That's fine.  Everybody mark that, and if
8  you're tied up, why you can get a -- have somebody stand in for
9  you.
10             MR. WARREN:  Okay, Your Honor, because -- Ernest
11 Warren on behalf of Mr. Fisher.  Because this is a potential
12 death penalty case, we are scheduled for a death penalty
13 seminar that we paid for in Colorado at that date.
14             THE COURT:  Oh, on that date?
15             MR. WARREN:  Yes.
16             THE COURT:  We'll move it, then.  That date is not
17 firm.  Whatever works out for you.  What day is best for you?
18             MR. WARREN:  The following week, the 21st is okay,
19 Your Honor.  Just the following week.
20             THE COURT:  Roughly is --
21             MS. BOLSTAD:  The 21st of May?
22             MR. WARREN:  Yes.
23             THE COURT:  That would be fine.
24             MR. WOLF:  That works for Mr. Erickson as well, Your
25 Honor.

1       MR. WARREN:  Thank you, Your Honor.
2       MR. WOLF:  Your Honor, again Richard Wolf for
3  Mr. Erickson.  I appreciate the Court's desire to expedite the
4  decision regarding the -- whether it's a capital case or not.
5  I question whether Main Justice is going to be able, A, to
6  accomplish that.
7       THE COURT:  Well, if they can't, I may take some
8  other tactic.  I'm trying to get a disposition so we aren't
9  just sitting around here waiting for somebody back there in
10 D.C. to make up their mind.  They have the facts of the case.
11 They should be able to look at it and say yes or no.  And
12 that's -- that is -- that part should not take the times that
13 we're hearing about.
14      MR. WOLF:  But what they don't have, Your Honor, is
15 the defendant's -- each individual defendant's reasons and
16 mitigation to consider as to whether or not they want to
17 authorize the case.  And that's the part that takes the time,
18 us gathering that information, and then actually scheduling and
19 going -- because the protocol calls for each of us to go to
20 Main Justice and make that presentation.
21      And so the idea that we would be able to do that and
22 for them to incorporate it and make that decision within 60
23 days seems quite ambitious, and especially given the fact that
24 Attorney General Barr has just been nominated -- just been
25 confirmed.  I gather that there is a backlog -- Ms. Bolstad can

1  speak to this, but I'm suspecting that there is a backlog of
2  authorization decisions from around the country that the
3  attorney general is going to have to make before he gets to
4  these cases.
5              So I just wanted the Court to be aware that the
6  concern is not so much the government knowing what they know
7  about their facts, but them not knowing about our mitigation.
8              THE COURT:  Yes.  Well, the dates I set will stay and
9  the people can work around dates.  We do that constantly.  If
10 they make out a case that's convincing, I can reconsider.  But
11 on the surface, whether it's a capital case is not a
12 complicated decision.  You can come in and say whatever your
13 defenses potentially would be, but what makes it a capital case
14 or not is not a complicated decision.  So that's where I am.
15             MR. WOLF:  Thank you, Your Honor.
16             THE COURT:  At least on the surface.
17             Now, is there further matters as far as the
18 government is concerned that you want to clarify or take up
19 today?
20             MS. BOLSTAD:  Not from the government, Your Honor.
21             THE COURT:  From -- further from the defense?
22             MR. SCHINDLER:  Yes, Your Honor, just one more thing.
23             THE COURT:  Sure.
24             MR. SCHINDLER:  We've set a status conference out
25 to --

1         THE COURT:  Would you hand him the mic, please.
2         THE CLERK:  He has a mic right there.
3         Just sit down and speak into it.
4         MR. SCHINDLER:  I'll just speak up a little.
5         THE COURT:  I can't imagine asking you to speak up.
6         MR. SCHINDLER:  It's not usually a problem for you to
7  hear me.
8         THE COURT:  Have a seat, have a seat.
9         MR. SCHINDLER:  We've set a status conference out now
10 quite a ways, and one of the concerns that I have echoes
11 Mr. Eklund's concern, which is that this is a case that was
12 prosecuted by the state.  They were prepared to go to trial in
13 the state.  And so I understand where you're dealing with a
14 Title III wiretap case and 25, you know, cartel members.  The
15 government is going to take months and months, obviously, in
16 some of those cases to get those materials together and to
17 provide discovery.
18         I don't think that's appropriate in this case.  And
19 so I'm -- I don't know that we need to set a deadline, but I
20 think I want just the Court to be aware that it may be
21 necessary for us to have a status conference before that one to
22 discuss discovery issues if the government is not moving
23 quickly to produce materials.
24         THE COURT:  As you know, we've had a lot of cases
25 together.

```
1              MR. SCHINDLER:  Yes.
2              THE COURT:  If you have a discovery issue, just call
3    up and I'll handle it.
4              MR. SCHINDLER:  Will do.
5              THE COURT:  As you go along, if anybody has an issue,
6    I'm here.  We'll just do it on telephone conference or on the
7    record, or you want a hearing, we're available any time in the
8    interim.
9              Anything further from anybody?
10             Thank you all for coming.  I appreciate it.
11             Court is in recess.
12             (Proceedings concluded at 11:28 a.m.)
```

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


*/s/Bonita J. Shumway*                          *March 20, 2019*
_____        _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter